UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

C.H., II, ET AL.                                                                    PLAINTIFFS

V.                                                       CIVIL ACTION NO. 3:08CV84 DPJ-JCS

RANKIN COUNTY SCHOOL DISTRICT, ET AL.                            DEFENDANTS

ORDER

This § 1983 case is before the Court on the motions of Defendants Cheryl Lott [26], Jerry Cox [24], Wealton Beverly, Dimitri Ellison, and the City of Flowood [37] to dismiss Plaintiffs' claims against them. Plaintiffs have responded in opposition. The Court, having considered the memoranda and submissions of the parties, finds that Defendants' motions should be as set forth herein.

I.   Facts and Procedural History[1]

Plaintiffs L.H. and C.H. filed this action on behalf of their son, C.H. II, against the Rankin County School District ("RCSD"), the City of Flowood, Hinds Community College, and several individuals employed by these three entities. The case stems from two discrete incidents involving different defendants, which occurred in June 2006 and September 2007. The following facts are gleaned from Plaintiffs' Complaint.

A.   June 2006

During the summer of 2006, C.H. II, who is African-American, attended summer school at Northwest Rankin High School ("NWR"), which falls within the RCSD. On June 26, 2006, C.H. II "defended himself in a fight" with G.J.G., who is white, "on school property outside the

---

[1] Due to the number of Defendants and witnesses, the moving Defendants' names will be in bold type face in this section of the Order.

football field house after the summer school session had ended." Complaint ¶ 24. Plaintiffs allege that G.J.G. was the aggressor and C.H. II was only defending himself. Defendant Richard Morrison, an assistant principal at NWR, alerted Defendant Kalvin Robinson, another assistant principal at NWR, about the fight, who in turn called the City of Flowood Police Department. Plaintiffs allege that neither Morrison nor Robinson actually witnessed the fight, but that these Defendants told Defendants **Dimitri Ellison** and **Wealton Beverly**, officers with the Flowood Police Department, that they had observed the fight and C.H. II was the aggressor.

**Ellison** and **Beverly** then arrested C.H. II on a charge of inciting a disturbance of the peace. C.H. II was transported to the police department, handcuffed, fingerprinted, photographed, and later bonded out by his mother. Plaintiffs insist that Defendants attempted to prosecute C.H. II in the municipal court, while state law requires that cases involving minors are to be handled exclusively by the Youth Court, unless jurisdiction is transferred. The case was eventually transferred to the Youth Court, and the charge was dismissed on March 29, 2007. As a result of the fight, C.H. II was also suspended for ten days by RCSD, which prohibited him from receiving credit for his summer school class.

Plaintiffs allege that C.H. II's constitutional rights were violated in several ways. First, Plaintiffs contend that Defendants **Ellison**, **Beverly**, Robinson, Morrison, the RCSD, and the **City of Flowood** caused C.H. II to be unlawfully arrested in violation of his Fourth Amendment rights. Second, Plaintiffs aver that these same Defendants wrongfully prosecuted C.H. II in municipal court in the absence of a youth court transfer in violation of his procedural and substantive due process rights under the Fourteenth Amendment. Third, Plaintiffs assert that the RCSD, along with Defendant Wendy Tucker, the principal of NWR, violated C.H. II's

2

procedural and substantive due process rights under the Fourteenth Amendment by expelling him for the remainder of the summer school session. Fourth, Plaintiffs allege that all Defendants impermissibly discriminated against C.H. II on account of his race in violation of the equal protection clause of the Fourteenth Amendment.

B. September 2007

In the fall of 2007, C.H. II, now a junior at NWR, took an auto body class at the Pearl/Rankin Career and Technical Center ("PRCTC"), which is operated by Hinds Community College ("HCC"). On September 24, 2007, a white female student accused C.H. II of sexual harassment in the classroom, including an allegation that he used a blower on his jumpsuit in an inappropriate manner. C.H. II denies the allegations and claims that Defendant **Jerry Cox**, an instructor at PRCTC, and Defendant **Cheryl Lott**, director of PRCTC, attempted to photograph and search C.H. II's jumpsuit. When he refused the search, **Cox** and **Lott** suspended him for two days.

After the suspension, **Cox** required C.H. II to agree to go to counseling before he could re-enter the classroom. In response, C.H. II told **Cox** that "he only needed God and his father and he did not need to go to counseling." Complaint ¶ 93. Thereafter, on October 8th, Defendants **Cox** and **Lott** asked C.H. II and his father to sign an instructor-student classroom/lab contract, which outlined expected behavior from the instructor and student in the classroom. They refused to sign the contract because of their religious beliefs. Defendants **Cox** and **Lott** therefore prohibited C.H. II from returning to the auto body class.[2] Plaintiffs allege that Defendants **Cox**, **Lott** and HCC

---

[2] In December 2007, Plaintiffs asked that C.H. II be allowed to transfer to the Pearl Municipal School District. Their request was denied by the RCSD.

violated C.H. II's First Amendment rights to freely exercise his religion when he was denied readmission to the auto body class. In addition, as stated earlier, Plaintiffs allege that all Defendants impermissibly discriminated against C.H. II on account of his race in violation of the equal protection clause of the Fourteenth Amendment.

    C.      Pending Motions

Defendants **Beverly**, **Ellison**, and the **City of Flowood** have collectively filed a motion to dismiss Plaintiffs' claims against them [37]. Likewise, Defendants **Cox** [24] and **Lott** [26] have filed separate motions to dismiss Plaintiffs' claims against them. Plaintiffs have responded to all motions, and the motions are now ripe for decision.

II.     Analysis

    A.      Motion to Dismiss Standard

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). To overcome a Rule 12(b)(6) motion, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965 (quotation marks, citations, and footnote omitted). "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Cuvillier v. Taylor*,

503 F.3d 397, 401 (5th Cir. 2007) (citing *Twombly*, 127 S. Ct. at 1966) (internal quotation marks omitted)).

B. Qualified Immunity

"Qualified immunity shields government officials performing discretionary functions from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Huang v. Harris County*, 264 F.3d 1141, 2001 WL 822534, at *5 (5th Cir. 2001) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 488 (5th Cir. 2001)). When a defendant raises qualified immunity, the burden is on the plaintiff to "demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

> Because qualified immunity constitutes an immunity from suit rather than a mere defense to liability, the defense is intended to give government officials a right not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery as inquiries of this kind can be peculiarly disruptive of effective government. Thus, adjudication of qualified immunity claims should occur at the earliest possible stage in litigation.

*Id.* "If qualified immunity is raised in a motion to dismiss, 'it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness.'" *Senu-Oke v. Jackson State Univ.*, 283 F. App'x 236, 239 (5th Cir. 2008) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

To determine if an individual is entitled to qualified immunity, the court applies a two-step analysis. "First, [the court] ask[s] whether, considered in the light most favorable to the plaintiff, the plaintiff has alleged facts that, if proven, would establish that the official violated the plaintiff's constitutional rights." *Id.* at 238 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

5

"If the defendant's conduct did not violate [the] plaintiff's constitutional rights under the first prong, . . . he is entitled to qualified immunity." *Blackwell v. Laque*, No. 07-30184, 2008 WL 1848119, at *2 (5th Cir. Apr. 24, 2008). The second prong requires the court to consider

> whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions.

*Freeman*, 483 F.3d at 411.

Until recently, district courts were required to address these prongs in order, first determining whether a constitutional violation occurred. *Saucier,* 533 U.S. at 201. That mechanical approach was overruled in *Pearson v. Callahan*, freeing district courts to address the "clearly established" prong of the qualified immunity test before deciding whether a constitutional violation had occurred. 129 S. Ct. 808, 818 (2009).

    C.    Municipal Liability

Municipalities are subject to § 1983 liability "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Municipal liability under § 1983 requires proof of 1) a policymaker; 2) an official policy; and 3) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694). "Municipal liability cannot be sustained under a theory of respondeat superior. [Rather,] the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will

6

almost never trigger liability." *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (internal citations and quotations omitted).

      D.      Claims Related to the June 2006 Incident

As stated earlier, Defendants Beverly, Ellison, and the City of Flowood (the "Municipal Defendants") filed a motion to dismiss Plaintiffs' claims. In their response, Plaintiffs summarize their claims against these Defendants as follows:

> In the present case, the plaintiffs alleged that police officers for the City of Flowood, Mississippi were acting pursuant to a city policy or custom when they arrested C.H. II in violation of his constitutional rights. The constitutional rights the officers violated were C.H. II's right not to be arrested unless probable cause existed for the arrest; the treatment of C.H. II, an African-American, in an arbitrary and different manner than G.J.G., a white student, on account of race; and arresting, handcuffing, booking, photographing, and fingerprinting a 16 year old minor on a felony charge not committed in the officers' presence and when the officers did not have a Youth Court Order authorizing the arrest.

Plaintiffs' Response at 2. The Court will first address the claims as they relate to Defendants Beverly and Ellison and then examine the City of Flowood's motion.

            1.      *False Arrest*

"The right to be free from arrest without probable cause is a clearly established constitutional right." *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994). Stated differently, a claim of false arrest requires a showing of a lack of probable cause. *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001). "The Supreme Court has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). "Police officers

who reasonably but mistakenly conclude that probable cause is present are entitled to qualified immunity." *Mangieri*, 29 F.3d at 1017; *see also Mesa v. Prejean*, 543 F.3d 264, 269 (5th Cir. 2008) ("A mistake reasonably made as to probable cause justifies qualified immunity.").

In this case, Plaintiffs assert that Beverly and Ellison unlawfully arrested C.H. II based on "incomplete and inaccurate hearsay within hearsay information." Plaintiffs' Response at 8. According to Plaintiffs, neither Robinson nor Morrison witnessed the fight, yet they reported to Defendants Ellison and Beverly "that they had observed the fight and that the plaintiff . . . was the aggressor." Complaint ¶ 36. The incident report written by Defendant Beverly, which is attached to and incorporated into Plaintiffs' Complaint, confirms that Defendants Robinson and Morrison advised Beverly of the fight and that at least one of them[3] told Beverly he "noticed C. . . H. . . on top of G . . . G . . . hitting and kicking." Complaint at Exh. "C." The report further states that G.J.G. was offered medical attention at the scene and later went to the hospital. *Id*.

Thus, according to Plaintiffs' own averments and record evidence, the officers were told that a high ranking school official actually saw the fight. The officers also reported that G.J.G. was offered, and later received, medical attention. Complaint at Exh. "C." These facts were sufficient for "reasonable person to conclude that the suspect had committed or was committing an offense." *Spiller v. Texas City*, 130 F.3d 162, 165 (5th Cir. 1997); *see also Mesa*, 543 F.3d at 269 ("A mistake reasonably made as to probable cause justifies qualified immunity."); *United States v. Burbridge*, 252 F.3d 775, 778 (5th Cir. 2001) (noting that a citizen's eyewitness account of criminal activity will constitute sufficient probable cause) (citing *Ahlers v. Schebil*, 188 F.3d

---

[3] The report refers only to "Complainant," and it is unclear if that was Robinson or Morrision.

365, 370 (6th Cir. 1999)); *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001) (reversing trial court's failure to find qualified immunity in false arrest case where officers received report of fight and found physical evidence that fight had occurred). Officers Beverly and Ellison are entitled to qualified immunity on the false arrest claim.

        2.       *Equal Protection*

In support of their equal protection claim, Plaintiffs rely on *Village of Willowbrook v. Olech*, in which the Supreme Court recognized an equal protection claim brought by a "'class of one', where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." 528 U.S. 562, 564 (2000); *see also Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 824 (5th Cir. 2007). The incident report attached to Plaintiffs' Complaint shows that both C.H. II and G.J.G. were arrested and charged with the same offense on the same day. Thus, even though the officers were told by a purported eye witness that C.H. II was on top of G.J.G. kicking and hitting him, both young men were arrested.

Plaintiffs insist their equal protection claim against these officers is based on the fact that G.J.G was taken from the scene by his mother, while C.H. II was transported by police car and held until his mother bailed him out. However, the incident report clearly shows that G.J.G. was medically evaluated by the fire department at the scene, refused treatment, and was taken to the hospital by his mother.[4] There is no allegation in the Complaint that C.H. II required medical

--------

    [4] In their Complaint, Plaintiffs aver: "White students have committed violations of the RCSD Handbook leading to suspension, but they have been treated differently from C.H. II." Complaint ¶ 68. It appears this allegation is not directed toward the officers, as it appears in the context of discussing C.H. II's suspension following the fight.

attention. Thus, based on the Complaint and its attachments, C.H. II and G.J.G. were not "similarly situated" in that G.J.G. required medical attention. *Id*. Alternatively, even if the two young men could be considered similarly situated, G.J.G.'s need for medical treatment reflects "a rational basis for the difference in treatment." *Id*. Ultimately though, the officers arrested both young men on the same day under the same charges. As such, Plaintiffs have failed to state a valid equal protection claim against Defendants Beverly and Ellison.

    3.  *Municipal Court/Youth Court*

Finally, Plaintiffs claim that C.H. II was improperly processed in municipal court, including photographing and fingerprinting, when he should have been transferred to the youth court. In doing so, Plaintiffs allege that C.H. II's substantive and procedural due process rights were violated. Plaintiffs rely on Mississippi Code Annotated Section 43-21-301(2) which provides that "no child in a matter in which the youth court has exclusive original jurisdiction shall be taken into custody by a law enforcement officer . . . unless the judge . . . has issued a custody order to take the child into custody."

Defendants assert a number of grounds for dismissing this claim, all of which Plaintiffs failed to address in their response. First, Defendants point out that Plaintiffs acknowledge in their own Complaint that the case was transferred to the youth court, which ultimately dismissed the charge. Second, Defendants note that the release form attached to Plaintiffs' Complaint details that C.H. II was released to the custody of his mother and that the court date would be determined *by the youth court*. Third, even if the municipal court assumed jurisdiction over C.H. II, Plaintiffs failed to exhaust the available state remedy of challenging jurisdiction, so the claim should be dismissed under the holding in *Parratt v. Taylor*, 451 U.S. 527 (1981). Fourth, Defendants argue

that the Mississippi Youth Court Act expressly provides that "[a] child in the jurisdiction of the youth court and who has been taken into custody for an act, which if committed by an adult would be a felony . . . , may be photographed and fingerprinted or both." Miss. Code Ann. § 43-21-255(2). The statute further provides that "[a]ny law enforcement agency taking such photographs or fingerprints shall immediately report the existence and location of the photographs and fingerprints to the youth court." *Id.* Finally, and perhaps most importantly, Defendants assert that a purported violation of the Mississippi Youth Court Act by these officers does not state a violation of a federal constitutional right. *See Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005) ("[A] violation of a state statute alone is not cognizable under § 1983 because § 1983 is only a remedy for violations of federal statutory and constitutional rights."); *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 n.4 ("Violation of a state statute is not actionable under § 1983." (citing *Jones v. Diamond*, 594 F.2d 997, 1011 (5th Cir. 1979)).

In response, Plaintiffs rely on the Fifth Circuit Court of Appeals decision in *White v. Walker*, but this reliance is misplaced. 950 F.2d 972 (5th Cir. 1991). In *White*, the plaintiff alleged a *state law* claim for violation of the Mississippi Youth Court Law. *Id.* at 975 (affirming summary judgment on state law claim where child was charged with a traffic violation because under Mississippi law, criminal courts have concurrent jurisdiction with the youth court over traffic violations). Here, Plaintiffs' Complaint only alleges violations of the United States Constitution. Having offered no other response to Defendants' grounds for dismissal, and finding Defendants' grounds persuasive, the Court finds that Plaintiffs' substantive and procedural due process claims based on alleged violations of the Mississippi Youth Court Act are due to be dismissed.

*4.     City of Flowood*

Defendant City of Flowood has likewise moved the Court to dismiss the § 1983 claims. As stated *supra*, a municipality is liable under § 1983 only if a policy or custom was the "moving force" behind a constitutional violation. *Piotrowski*, 237 F.3d at 578. Having found no constitutional violations, dismissal of Plaintiffs' claims against the City of Flowood is likewise appropriate.[5]

E.     Claims Related to September 2007 Incident

Defendants Lott and Cox filed the instant motion seeking the following: 1) dismissal of Plaintiffs' Complaint for failure to assert a constitutional violation; or 2) a stay of the case and an order directing Plaintiffs to file a reply detailing their specific allegations against these Defendants; or 3) if the Court allows the case to proceed, a limitation of discovery to the issue of qualified immunity. Plaintiffs alleged that Defendants Lott and Cox, both of whom are employees of HCC, treated C.H. II differently on account of his race in violation of the equal protection clause of the Fourteenth Amendment and violated C.H. II's First Amendment rights by denying him readmission to the auto body class on account of his religious beliefs.

*1.     Equal Protection*

Turning first to Plaintiffs' equal protection claim, as stated earlier, the Supreme Court has recognized an equal protection claim brought by a "'class of one', where the plaintiff alleges that [he] has been intentionally treated differently from other similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook*, 528 U.S. at 564; *see also*

---

[5] The Municipal Defendants also moved for dismissal of any state law claims for failure to comply with the Mississippi Tort Claims Act; however, Plaintiffs' Complaint does not contain any state law claims.

*Stotter*, 508 F.3d at 824. Plaintiffs allege that these Defendants intentionally treated C.H. II "differently from other students regarding being allowed to attend the auto body class, being allowed to take the test, and in searching and disciplining C.H. II for an offense that he did not commit." Plaintiffs' Response at 6. To support his claim, Plaintiff cites to a district court case from the Eastern District of California, *Simonian v. Fowler Unified School District*, 473 F. Supp. 2d 1065 (E.D. Cal. 2007).

In *Simonian*, the plaintiff was expelled for three months when marijuana was found in his vehicle by school officials. *Id.* at 1066. The district court denied the defendants' motion to dismiss the plaintiff's equal protection claim based on the administration of discipline. *Id.* at 1072. However, *Simonian* is distinguishable from the instant action. There, the plaintiff alleged that his treatment was "in contrast to the discipline accorded the daughter of the District's governing board who was found to be under the influence of drugs and/or alcohol on campus." *Id.* at 1069.

Here, as Defendants point out, Plaintiffs' Complaint and Response are devoid of any indication of a similarly situated individual that was treated differently, *i.e.*, a student who was accused of sexual harassment in the classroom or even a student accused of similar wrongdoing. *See Williams v. Riley*, 275 F. App'x 385, 390 (5th Cir. 2008) (affirming dismissal of equal protection claim where the plaintiffs did not allege they had been treated differently than similarly-situated individuals). As such, Plaintiffs have failed to state a valid equal protection claim against Defendants Lott and Cox. *See Price*, 256 F.3d at 369.

## 2. First Amendment

Plaintiffs also allege that C.H. II was prevented from attending the auto body class and ultimately expelled because of his religious beliefs in violation of the First Amendment. A review of Plaintiffs' Complaint shows that C.H. II cited his religious beliefs as his basis for refusing to attend counseling and refusing to sign a classroom behavior contract.

Defendants Lott and Cox argue that they are entitled to qualified immunity because Plaintiffs have failed to allege the deprivation of a clearly established right, or alternatively, that their conduct was objectively unreasonable. As noted above, the Court is no longer bound by *Saucier* to first determine whether conduct breached a constitutional right. *Pearson*, 129 S. Ct. at 818. In particular, *Pearson* observed that "there are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." *Id*. This is one such case, and the Court will therefore skip to the second prong.

A right is clearly established when its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wooley v. City of Baton Rouge,* 211 F.3d 913, 919 (5th Cir. 2000) (citation omitted). "It is important to emphasize that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citation omitted). For example, there is no doubt of the general proposition

> that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. Yet that is not enough. Rather, . . . the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable

14

officer that his conduct was unlawful in the situation he confronted.

*Id*. at 198-99 (citations omitted, quotations omitted).

In the present case, Plaintiffs claim that C.H. II's First Amendment rights were violated because he refused to comply with certain requests on religious grounds. It is certainly true that the right to freely exercise one's religion is clearly established. *See Sherbert v. Verner*, 374 U.S. 398, 402 (1963) ("Government may neither compel affirmation of a repugnant belief, nor penalize or discriminate against individuals or groups because they hold religious views abhorrent to the authorities . . . ." (internal citations omitted)). However, the Court must consider whether the right is clearly established in the present context. *Brosseau*, 543 U.S. at 198.

Plaintiffs cite two cases they contend demonstrate a clearly established right, *Good News Club v. Milford Central School*, 533 U.S. 98 (2001) and *Chandler v. Siegelman*, 230 F.3d 1313 (11th Cir. 2000), both of which are factually and legally distinguishable. In *Good News Club*, the Supreme Court found that a school's denial of the use of the facilities after hours by a religious club was unconstitutional "viewpoint discrimination." 533 U.S. at 107. In *Chandler*, the Eleventh Circuit held that a permanent injunction forbidding a school from "permitting" students to speak religiously was unconstitutional. 230 F.3d at 1316. These cases address prohibitions that infringe upon the free exercise of religion; they do not address the issue before the Court.

A more analogous context was explored in *Bowen v. Roy*, where the appellees contended that obtaining a Social Security number for their two-year-old daughter would violate their Native American religious beliefs. 476 U.S. 693, 695 (1986). The United States Supreme Court disagreed, noting that "[d]ecisions rejecting religiously based challenges have often recited the fact that a mere denial of a governmental benefit by a uniformly applicable statute does not

15

constitute infringement of religious liberty." *Id*. at 704. The Court concluded

> that government regulation that indirectly and incidentally calls for a choice between securing a governmental benefit and adherence to religious beliefs is wholly different from governmental action or legislation that criminalizes religiously inspired activity or inescapably compels conduct that some find objectionable for religious reasons.

*Id*. at 706.

In light of *Bowen*, it is far from clear that a constitutional violation occurred. Nevertheless, if Defendants did violate a constitutional right, the right had not been clearly established. Plaintiffs have offered no authority in the proper analytical context, and the Court's own review of the case law failed to uncover cases that were sufficiently analogous for the Court to find a clearly established constitutional violation. As such, Defendants' motion as to Plaintiffs' First Amendment claims is granted.

III.   Conclusion

Based on the foregoing, the Court finds as follows:

The Municipal Defendants' motion to dismiss [37] is granted. Defendant Lott's [26] and Defendant Cox's [24] motions to dismiss are granted. Discovery may proceed fully against the remaining Defendants.

**SO ORDERED AND ADJUDGED** this the 30th day of March, 2009.

s/ *Daniel P. Jordan III*<br>UNITED STATES DISTRICT JUDGE